NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>**SUSAN D. WIGENTON**<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST.<br>NEWARK, NJ 07101<br>973-645-5903 |

April 5, 2021

Linda D. Foster, Esq.
Office of the Federal Public Defender
1002 Broad Street
Newark, NJ 07102
*Counsel for Defendant*

Jordan M. Anger, Esq.
United States Attorney's Office
970 Broad Street, Suite 700
Newark, NJ 07102
*Counsel for Plaintiff*

## LETTER OPINION FILED WITH THE CLERK OF THE COURT

    **Re:**    *United States v. Juan David Vasquez-Uribe*
            **Crim. No. 01-768 (SDW)**

Counsel:

Before this Court are Defendant Juan David Vasquez-Uribe's ("Defendant") Motions for Compassionate Release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A). (D.E. 72, 73, 76.) This Court having considered the parties' submissions, and for the reasons discussed below, denies Defendant's motions.

## DISCUSSION

A.

Although a district court generally has limited authority to modify a federally-imposed sentence once it commences, *see United States v. Epstein*, Crim. No. 14-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020); *Dillon v. United States*, 560 U.S. 817, 825 (2010), the recently-enacted First Step Act ("FSA"), 18 U.S.C. § 3582(c)(1)(A)(i), permits district courts to grant compassionate release where there exist "extraordinary and compelling reasons" to reduce a sentence. The statute provides, in relevant part, that:

> (A) [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1). As such, under the FSA, "a defendant seeking a reduction in his term of imprisonment bears the burden of establishing both that he has satisfied (1) the procedural prerequisites for judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." *Epstein*, 2020 WL 1808616, at *2. At the second step, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission,[1] and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." *United States v. Sparrow*, Crim. No. 18-653, 2020 WL 4364328, at *2 (D.N.J. July 30, 2020) (citation omitted).

B.

On December 23, 2008, this Court found Defendant guilty of conspiracy to import cocaine, in violation of 21 U.S.C. § 963, and conspiracy to distribute narcotics, in violation of 21 U.S.C. § 846. (*See* D.E. 46.) On July 22, 2009, this Court sentenced Defendant to 360-month terms of imprisonment on each count to run concurrently. (*See id.*) This Court granted a sentence reduction pursuant to United States Sentencing Guideline Amendment 782 on October 31, 2016, and reduced Defendant's sentence to two 292-month terms of imprisonment to run concurrently. (*See* D.E. 68.) Defendant is serving his sentence at the United States Penitentiary in Atlanta, Georgia ("USP Atlanta"). (*See* D.E. 77 at 2.)

Defendant submitted a request for compassionate release to the Bureau of Prisons ("BOP") on April 10, 2020, which the BOP did not answer. (*See* D.E. 72, D.E. 77 at 9.) Defendant's daughter filed a second request on his behalf to the warden of the Oklahoma Transfer Center on May 4, 2020, and likewise received no response. (*See* D.E. 73-1.) Defendant filed a *pro se* motion for compassionate release in this Court on April 10, 2020, followed by an amended *pro se* motion

---

[1] The Sentencing Commission's relevant policy statement identifies medical conditions that meet the "extraordinary and compelling" requirement as those where the defendant is (i) suffering from a terminal illness, or (ii) suffering from a serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1(A).

on June 23, 2020. (D.E. 72, 73.) Defendant's appointed counsel filed a supplemental motion on January 20, 2021, and the Government opposed Defendant's motions on February 25, 2021. (D.E. 76, 77.) Because Defendant has exhausted his administrative remedies, his motions are ready for judicial review. *See* 18 U.S.C. § 3582(c)(1)(A)(i).

C.

Defendant is sixty-three years old and contends that his asthma, high cholesterol ("hyperlipidemia"), enlarged prostate, shoulder bursitis, sciatica, gastrointestinal problems, one operating lung, and chronic knee, leg, and joint pain make him more vulnerable to becoming seriously ill should he contract COVID-19. (*See* D.E. 76 at 3.) The Centers for Disease Control and Prevention (CDC) indicate that people with moderate to severe asthma "can be more likely to get severely ill from COVID-19." *See* CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Mar. 29, 2021). The CDC does not associate any of Defendant's other asserted conditions with a heightened risk of serious illness from COVID-19. *See id.*[2]

Though this Court has sympathy for Defendant's concerns regarding possible medical complications caused by COVID-19 exposure, Defendant's medical conditions do not establish "extraordinary and compelling reasons" to warrant his release. *See Epstein*, 2020 WL 1808616, at *2. As of February 2, 2021, Defendant is fully vaccinated against COVID-19. (*See* Govt. Opp. Ex. A at 149.) Thus, there is an "extremely small" likelihood that Defendant "will contract COVID-19 and become seriously ill." *United States v. Pabon*, Crim. No. 17-312, 2021 WL 603269, at *4 (S.D.N.Y. Feb. 16, 2021); *see United States v. Doostdar*, Crim. No. 18-255, 2021 WL 429965, at *3 (D.D.C. Feb. 8, 2021) (denying compassionate release because defendant's "probability of becoming ill from COVID-19 [was] significantly diminished by the fact that he [] received the COVID-19 vaccine").

Even if Defendant were unvaccinated, his medical conditions would not warrant release. The CDC warns asthma *can* increase an individual's risk for serious illness from COVID-19 if the asthma is *moderate to severe*. *See* CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Mar. 29, 2021) (emphasis added). Defendant's medical records indicate that he has "mild intermittent asthma," which the BOP is adequately and consistently managing with an inhaler, (Got. Opp. Ex. A at 44), and he therefore does not fall within the CDC's range of individuals with increased risk of serious illness from COVID-19. *See United States v. Batista*, Crim. No. 18-415, 2020 WL 4500044, at *3 (D.N.J. Aug. 5, 2020) (denying compassionate release because defendant's mild asthma that he controlled with an inhaler was not a medical condition that, according to the CDC, "elevate[d] an individual's risk of becoming gravely ill" from COVID-19); *United States v. Gore*, Crim. No. 10-250, 2020 WL 3962269, at *4 (D.N.J. July 13, 2020) (denying compassionate release because defendant's prison was adequately treating his "relatively mild" asthma); *United States v. Zaffa*, Crim. No. 14-50-4, 2020 WL 3542304, at *2 (D.N.J. June

---

[2] Although the CDC does indicate that people with chronic lung disease can be "more likely to get severely ill from COVID-19," *see* CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Mar. 29, 2021), there is no medical evidence in the record that Defendant has only one operating lung or that he suffers from chronic lung disease.

3

29, 2020) (same). As further evidence that Defendant is receiving adequate medical care, Defendant received seven COVID-19 tests between June 2020 and November 2020, all of which tested negative, before he received both doses of the Pfizer COVID-19 vaccine. (*See* D.E. 77 at 3; Govt. Opp. Ex. A); *see also United States v. McDonald*, Crim. No. 09-656, 2020 WL 3638280, at \*7 (D.N.J. July 2, 2020) (denying compassionate release where defendant received adequate health care, including two negative COVID-19 tests).[3]

Even if this Court were to find that Defendant's health conditions are extraordinary and compelling reasons for release, this Court would still deny his motions because the applicable sentencing factors under 18 U.S.C. § 3553(a) weigh against his release. Though Defendant has served approximately 212 months of his 292-month term of imprisonment, (*see* D.E. 77 at 12), his offenses were serious. Defendant was accountable for 350 kilograms of cocaine that he sought to import and distribute as part of a prolific drug trafficking organization. (*See id.*) Defendant also has an extensive criminal history, including prior convictions for possession with intent to distribute cocaine, burglary, grand larceny, possession of a firearm while committing a felony, escape, and illegal reentry into the United States. (*See id.*) Defendant has repeatedly returned to the United States after criminal convictions and deportation, including deportations in 1982, 1985, 1994, and 2000. (*See id.*) In fact, Defendant returned to the United States just two months after his deportation in 2000 to begin the conspiracy that led to his current conviction. (*See id.*)

A reduced sentence here would not "reflect the seriousness of the offense," "promote respect for the law," or "provide just punishment for the offense," nor would it be appropriate considering "the nature and circumstances of [Defendant's] offense and [his] history and characteristics." 18 U.S.C. §§ 3553(a)(1) and (a)(2)(A); *see Pepper v. United States*, 562 U.S. 476, 480 (2005) (explaining that sentencing courts "must consider . . . the history and characteristics of the defendant"). It would also create an "unwarranted sentence disparit[y] among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6); *see Kimbrough v. United States*, 552 U.S. 85, 107 (2007) (noting that "uniformity remains an important goal of sentencing").[4] This Court will therefore deny Defendant's motions.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motions for Compassionate Release are **DENIED**. An appropriate order follows.

                                                       /s/ Susan D. Wigenton    
                                                 **SUSAN D. WIGENTON, U.S.D.J.**

---

[3] Defendant is likewise receiving adequate care for his hyperlipidemia, (*see* Govt. Opp. Ex. A at 169), and multiple courts in this District have denied compassionate release where the defendant's hyperlipidemia was adequately managed because the condition is not recognized by the CDC as increasing the risk of severe illness from COVID-19. *See, e.g.*, *United States v. Vizcaino*, Crim. No. 16-90, 2021 WL 672931, at \*4 (D.N.J. Feb. 22, 2021); *United States v. Rosa*, Crim. No. 16-459-01, 2021 WL 487048, at \*3 (D.N.J. Feb. 10, 2021); *United States v. Carazolez*, Crim. No. 18-81, 2020 WL 5406161, at \*4 (D.N.J. Sept. 9, 2020); *United States v. Horvath*, Crim. No. 15-400-1, 2020 WL 7074379, at \*5 (D.N.J. Dec. 3, 2020).

[4] Further, Defendant asks this Court to release him to an Immigration and Customs Enforcement detention facility, (*see* D.E. 76 at 20), but Defendant presents no evidence that the facility is better equipped than USP Atlanta to accommodate his medical conditions or protect him against severe illness from COVID-19.

Orig: Clerk
cc: Parties